AO 91 (Rev. 11/11) Criminal Complaint          AUSA Michael J. Kelly (312) 697-4037

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ISAAC MYLES | CASE NUMBER: 20 CR 021<br><br>MAGISTRATE JUDGE COLE |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about December 9, 2019, and on or about January 6, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 2261A(2) | Cyberstalking |

This criminal complaint is based upon these facts:

  X  Continued on the attached sheet.

_____
MICHAEL WOODS-HAWKINS
Supervisory Deputy U.S. Marshal
United States Marshals Service

Sworn to before me and signed in my presence.

Date: January 10, 2020             _____
                                                         *Judge's signature*

City and state: Chicago, Illinois        JEFFREY COLE, U.S. Magistrate Judge
                                                             *Printed name and Title*

**FILED**

JAN 10 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, MICHAEL WOODS-HAWKINS, being duly sworn, state as follows:

1. I am Supervisory Deputy U.S. Marshal with the United States Marshals Service. I have been so employed since approximately March 2003. My current responsibilities include the investigation of criminal violations relating to the protection of Court personnel, courthouse security, and investigation of threats and other violent crimes directed at the Court and Court personnel.

2. This affidavit is submitted in support of a criminal complaint alleging that ISAAC MYLES has violated Title 18, United States Code Section 2261A(2) (cyberstalking). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging MYLES with cyberstalking, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, and my review of documents and other evidence obtained in the course of this investigation.

I.   **SUMMARY OF PROBABLE CAUSE**

4.   The United States Marshals Service (USMS) is investigating allegations that ISAAC MYLES is stalking and harassing a United States Probation Department Officer (Officer A), assigned to the Probation Office for the United States District Court for the Northern District of Illinois (Probation Office), by making repeated telephone calls using **Subject Phone 1** and describing in graphic detail how he will perform sex acts on Officer A as well as by referring to Officer A in offensive, obscene, and degrading terms. MYLES is currently on federal supervised release after being convicted of violating 18 U.S.C. § 922(g) (felon in possession of a firearm) and 21 U.S.C. § 841(a)(1) (distribution of a controlled substance) and serving a 180 month sentence of imprisonment (later reduced to 117 months). *United States v. Isaac Myles*, 10 CR 647, Dkt. 179 at 3.[1]

5.   According to Officer A, during a September 7, 2018, scheduled home visit to MYLES's residence (the **Subject Premises**), MYLES partially exposed his genitals to Officer A. Later, the user of **Subject Phone 1**—believed to be MYLES for reasons set forth below—between December 9, 2019, and continuing through January 6, 2020, made repeated calls to a cellular telephone number with a (773) area code, assigned to Officer A by the Probation Office and used by her in her work as a United States Probation Officer. The user of **Subject Phone 1** leaves lengthy messages on Officer A's voicemail in which he describes engaging in sex acts with

---

[1] On January 9, 2020, the court issued a bench warrant for a supervised release violation based on certain of the same facts alleged in this affidavit.

2

Officer A, refers to Officer A by name, and addresses Officer A in offensive, obscene, and degrading terms.

6. Based on toll records for **Subject Phone 1**, the user of **Subject Phone 1** has been in frequent contact with various persons known by the Probation Office, the Federal Bureau of Prisons, or law enforcement to associate with MYLES. Additionally, based on location information for **Subject Phone 1**, **Subject Phone 1** has consistently been located in or near the **Subject Premises** (MYLES's home) in early January 2020. Further, Officer B—who was assigned to MYLES after he exposed himself to Officer A—has had several communications with MYLES in connection with his supervision and is familiar with MYLES's voice. According to Officer B, who has listened to some of the voicemails left by **Subject Phone 1**, the voice of the caller is likely MYLES.

7. On or about January 9, 2020, Magistrate Judge Jeffrey Cole authorized a search warrant for the **Subject Premises** (20 M 018), which law enforcement executed on January 10, 2020. During the execution of the search, law enforcement encountered MYLES in the **Subject Premises**, and located **Subject Phone 1** on a desk in MYLES's bedroom. MYLES acknowledged ownership of **Subject Phone 1**, but stated that he had purchased it one day earlier.

## II. FACTS SUPPORTING PROBABLE CAUSE

### A. The user of Subject Phone 1 leaves harassing and intimidating voicemails for Officer A.

8. According to the Probation Office, MYLES has been on supervised release under the supervision of the Probation Office since July 20, 2018. MYLES

3

has provided the address of the **Subject Premises** to the Probation Office as his home address. According to Officer A, on or about September 7, 2018, Officer A visited MYLES at the **Subject Premises** for a home visit. While there, Officer A noticed that MYLES had partially exposed his genitals, which Officer A documented in a subsequent report that was filed with the court that had sentenced MYLES to supervised release. *United States v. Myles*, 10 CR 647, Dkt. 223. Following that incident, the Probation Office reassigned supervision of MYLES to a different probation officer, Officer B. Since that date, MYLES has not indicated that his residence has changed, which MYLES is required to do by his conditions of supervised release. *United States v. Isaac Myles*, 10 CR 647, Dkt. 179 at 3.

9. According to telephone records for Officer A's phone, the user of **Subject Phone 1**—a cellular phone assigned telephone number (702) 302-8751 with service provided by AT&T—has called Officer A approximately 29 times from December 1, 2019, to January 2, 2020.[2] Based on my training and experience and information I received from other experienced law enforcement personnel, I know that the use of **Subject Phone 1** constitutes a use of an electronic communication system, electronic communication service, or other facility of interstate commerce. The calls have either gone directly to voicemail or, based on phone records, were not connected at all. The calls are primarily made in the afternoon and evening hours. There is no set pattern,

---

[2] According to telephone records, **Subject Phone 1** is a prepaid phone with no subscriber information.

4

although on days when the user of **Subject Phone 1** calls, he calls repeatedly on the same day.

10. The user of **Subject Phone 1** has left numerous voicemail messages in which the user described engaging in sex acts with Officer A, which are set forth in summary below.[3]

11. Each of these calls described below were made from **Subject Phone 1** to Officer A's work cell phone. For each of the calls, according to phone records for Officer A's work cell phone, the user of **Subject Phone 1** used *67 in an attempt to disguise his telephone number.[4]

12. Portions of the voicemails left by the user of **Subject Phone 1** to Officer A's phone are as follows:

    a. On December 9, 2019, at approximately 2:37 p.m., the user of **Subject Phone 1** left a 30 second message in which the user just says "oh baby...baby...".

    b. On December 9, 2019, at approximately 5:39 p.m., the user of **Subject Phone 1** left a 2 minute and 50 second message in which the user says, "Oh [Officer A's first name]...Oh [Officer A's first name]...Oh [Officer A's first name]....Oh [Officer A's first name] I want you so bad baby, I am masturbating right now baby...I wish I was fucking you baby....Open your legs baby...open your legs....My dick is so

---

[3] The voicemail messages described below are draft transcripts of call excerpts and do not represent every word spoken on the messages.

[4] At times, the caller refers to Officer A by her first name. To protect the privacy of Officer A, where the caller used Officer A's first name, I have substituted "[Officer A's first name]" in brackets.

5

hard baby....I'm gonna fuck you so good [Officer A's first name]...Make me cum [Officer A's first name]..."

    c.    On December 9, 2019, at approximately 6:05 p.m., the user of **Subject Phone 1** left a 1 minute, 38 second message in which the user says, "oh baby.....oh baby....i wish you were calling me baby and I want you to come over baby....get on this big dick.....I want you to be calling me..."

    d.    On December 10, 2019, at approximately 6:55 p.m., the user of **Subject Phone 1** left a 3 minute and 42 second message in which the user says "[Officer A's first name].....[Officer A's first name].....I want to fuck you so bad baby.....Give me that good pussy baby....I know it....I can tell by the way you walk.....I love a petite woman.....I want you so bad baby...Kiss me on my dick baby...I want my big dick in you baby.....I be stroking you baby...[Officer A's first name]....[Officer A's first name]....[Officer A's first name]...Don't report this...we still connected baby."

    e.    On December 10, 2019, at approximately 7:25 p.m., the user of **Subject Phone 1** left a 4 minute message in which the user says, "Want your pussy so bad [Officer A's first name].....i want you baby...[Officer A's first name] listen to me baby.....I want that pussy baby...C'mon baby...Give me that pussy baby.....I will fuck you so good.....you can be quiet...don't say nothing...don't say nothing....I'm not a creep baby....Listen to me [Officer A's first name]...Listen to me baby....I want to fuck you [Officer A's first name]..i know you want this dick you fuckin cunt....you fucking bitch...."

6

  f. On December 14, 2019, at approximately 2:00 p.m., the user of **Subject Phone 1** left a 2 minute and 40 second message in which the user says, "[Officer A's first name].....[Officer A's first name].....I want to stick my big dick in you, I want you to masturbate baby......"

  g. On December 23, 2019, at approximately 3:33 p.m., the user of **Subject Phone 1** left a 4 minute message in which the user says, "Oh [Officer A's first name]...I want to fuck you so bad....I want you [Officer A's first name]....This big dick Is here for you baby....I masturbate thinking about you [Officer A's first name].....I want you to feel my dick baby.....I'm gonna be fucking you so good....wish you were still calling me baby....I'm not a creep baby......Just want to fuck you so bad...let me come in that pussy baby...."

  h. On December 23, 2019, at approximately 3:39 p.m., the user of **Subject Phone 1** left a 2 minute and 34 second message in which the user says, "You don't have to feel fear, you don't have to feel danger...I'm a good guy [Officer A's first name] you just turn me on so bad...won't you pick up the phone....I want you to listen while I masturbate.....your so petite.....every time I see you I go crazy.....looking at that camel toe.....every time I see you in jeans I go crazy....I'm sorry....i'm sorry for doing this.....I want you to come with me baby...[Officer A's first name], oh [Officer A's first name], oh baby....."

  i. On December 23, 2019, at approximately 7:03 p.m., the user of **Subject Phone 1** left a 1 minute message in which the user says, "Oh baby....this here for you baby..."..

7

j. On December 23, 2019, at approximately 7:37 p.m., the user of **Subject Phone 1** left a 4 minute second message in which the user says "Your pussy is good, I got this dick in my hand, my dicks so big...baby I'm not a creep"...you're so gorgeous, your tight body baby...I know you're gonna fuck me [Officer A's first name], fuck my brains out. Play with that pussy for me.....your petite body baby..I know you know how to fuck baby....I know you want this dick.....I know your pussy wants this big dick [Officer A's first name]....."

k. On December 23, 2019, at approximately 7:58 p.m., the user of **Subject Phone 1** left a 4 minute message in which the user says, "Your pussy feels so good, play with that pussy, (repeated over and over again) I want to cum in that pussy, can you hear that...your pussy is dripping, your pussy is so tight...I want that pussy baby...your pussy is so good baby...I'm going to be holding that pussy right now...I want you to come with me baby...grab that dick.... Come on and fuck me baby..."

l. On December 23, 2019, at approximately 10:22 p.m., the user of **Subject Phone 1** left a 3 minute 37 second message in which the user repeatedly discusses Officer A "fucking" him, "sucking his dick," and "coming all over his big dick." At the end of the call, he calls her a "bitch" and a "whore" several times.

m. On December 31, 2019, at approximately 2:54 p.m., the user of **Subject Phone 1** left a 2 minute 37 second message in which the user says, "Kim......Kim" (not the first name of Officer A) and talks about "masturbating on this big dick...just want that pussy so deep...masturbate baby, I'm watching porn

8

thinking about you. I'm not a creep, please don't think I'm a creep.....that pussy is so good.....just want you to come."

n. On January 6, 2020, at approximately 6:38 p.m., the user of **Subject Phone 1** left a message in which the user says, "Get that pussy wet baby...play with that pussy....put that pussy on my dick baby.....masturbate and play on my dick baby....[Officer A's first name] fuck me baby...keep this to yourself...don't think I'm a creep baby...I'm just obsessed with you baby...[Officer A's first name] and your camel toe. Just fuck me baby."

o. On January 6, 2020, at approximately 6:49 p.m., the user of **Subject Phone 1** left a 4 minute message in which the user says, "Get that pussy wet baby.....oh.....get that pussy on my dick baby...playing on my dick.....oh good pussy...think about what this dick would do to that pussy... fuck me [Officer A's first name] ...Keep this to yourself [Officer A's first name] ...Please don't think I'm a creep...I just obsessed with you."

p. On January 6, 2020, at approximately 6:55 p.m., the user of **Subject Phone 1** left a 4 minute message in which the user says, "Oh [Officer A's first name]...fuck me baby....pick up the phone baby....fuck me [Officer A's first name]. Play with that pussy.....play with that pussy baby...oh [Officer A's first name] fuck me baby...keep this to yourself baby...I'm not a creep...you don't have to worry about me...you my fantasy...listen to this message...drink your bottle of wine...fuck me [Officer A's first name]...fucking bitch...you my bitch...I know you rubbing it right now...rub it bitch."

9

q. On January 6, 2020, at approximately 7:02 p.m., the user of **Subject Phone 1** left a 2 minute and 15 second message in which the user says, "Fuck this big dick bitch, play with that pussy, c'mon bitch…oh yeah play with that pussy…I need you [Officer A's first name] …Fuck me baby…I am about to cum baby. Im gonna cum baby…..c'mon…c'mon baby. C'mon [Officer A's first name]."

13. Based on my training and experience, and the training and experience of other law enforcement personnel, the content of the voicemails left by **Subject Phone 1** on Officer A's work cellular phone would be reasonably expected to cause substantial emotional distress to Officer A.

14. The user of **Subject Phone 1** does not identify himself on these calls.

15. On January 2, 2020, law enforcement sought and received an order from Chief Judge Rebecca Pallmeyer authorizing a pen register and trap and trace device on **Subject Phone 1** as well as the collection of real time physical location information for **Subject Phone 1**.

16. Based on 15-minute interval location information concerning **Subject Phone 1** received from AT&T, **Subject Phone 1** has been within 3,000 meters of the **Subject Premises** at all times between January 4, 2020, at approximately 1:39 a.m. and January 7, 2020, at approximately 5:04 p.m. Notably, that period includes the January 6 evening interval during which the user of **Subject Phone 1** left four voicemails on Officer A's work cellular phone.

**B.    MYLES is identified as the suspected user of Subject Phone 1.**

17.    Based on a review of toll records concerning **Subject Phone 1** received from AT&T, the user of **Subject Phone 1** has been in frequent contact with telephone numbers of individuals known by law enforcement to be associated with MYLES. For example:

   a.    On December 4, 9, 13 (multiple calls), 15, 23, 2019, **Subject Phone 1** placed calls to or received calls from a number ending in 7202. Based on information provided by MYLES to the Probation Office, the user of the number ending in 7202 is Individual A, a female relative of MYLES.

   b.    On December 2, 14 (multiple calls), 15 (multiple calls), 16 (multiple calls), 2019, **Subject Phone 1** placed calls to or received calls from a number ending in 8809. Based on information obtained from the Federal Bureau of Prisons, the user of the number ending in 7202 is Individual A, a relative of MYLES, who would sometimes rely on that number to contact MYLES during his incarceration.

   c.    On December 15 (multiple calls), 2019, **Subject Phone 1** placed calls to or received calls from a number ending in 7601. Based on information obtained from the Federal Bureau of Prisons, the user of the number ending in 7601 is Individual B, a relative of MYLES, who would sometimes rely on that number to contact MYLES during his incarceration in case 10 CR 647.

   d.    On December 2 (multiple calls), 3 (multiple calls), 4 (multiple calls), 5 (multiple calls), 7, 25, 28 (multiple calls), 2019, **Subject Phone 1** placed calls

11

to or received calls from a number ending in 0433. Based on information MYLES provided to law enforcement in the course of a prior arrest, the user of the number ending in 0433 is Individual C, a social associate of MYLES.

18. Additionally, Officer B—who was assigned supervision of MYLES after Officer A—has listened to certain of the voicemails left on Officer A's work cellular phone. Officer B, who has become familiar with MYLES's voice through conversations he has had with MYLES in connection with his supervision, believes the person who left those voicemails is likely MYLES.

### C. Law enforcement executes a search warrant on the Subject Premises and finds Subject Phone 1 in MYLES's bedroom.

19. On or about January 9, 2020, Magistrate Judge Jeffrey Cole signed search warrants authorizing the search of the **Subject Premises** and **Subject Phone 1** for evidence of violations of Title 18, United States Code, Sections 111(a) (assaulting and intimidating a federal employee) and 2261A (cyberstalking). 20 M 018, 20 M 019.

20. On or about January 10, 2020, law enforcement executed the search warrant at the **Subject Premises**. Based on 15-minute interval location information for **Subject Phone 1** received from AT&T, at the time of the search, **Subject Phone 1** appeared to still be within 3,000 meters of the **Subject Premises**.

21. Law enforcement encountered MYLES in the **Subject Premises**, as well as Individual A (MYLES's female relative referenced in paragraph 15(a) and (b)) and Individual D (MYLES's adult male relative, who lives in a separate unit at the same address of the **Subject Premises**).

12

22.     Law enforcement located **Subject Phone 1** in a bedroom with a single bed in the **Subject Premises**. Law enforcement dialed the phone number for **Subject Phone 1** set forth in ¶ 9 and observed that this caused **Subject Phone 1** to indicate an incoming call, thus confirming that the phone was in fact **Subject Phone 1**. Also found in the bedroom was an iPhone ("**Subject Phone 2**").

23.     Law enforcement advised MYLES of his Miranda rights, which MYLES acknowledged verbally. After receiving that rights admonishment, MYLES stated the bedroom that **Subject Phone 1** was located in was his bedroom. MYLES further stated that **Subject Phone 1** was his phone but stated that he had purchased it yesterday on the street for $20. Law enforcement asked MYLES the name of the person or store from which he purchased the phone, and MYLES declined to specify.

24.     Individual A made a statement to law enforcement claiming that multiple people sleep in the bedroom identified as MYLES's bedroom. Individual A further stated that she used **Subject Phone 1** at times. Law enforcement asked Individual A to specify when she had used **Subject Phone 1**, but Individual A declined to specify.

25.     Individual D made a statement to law enforcement stating that the room where **Subject Phone 1** was found was only used as MYLES's bedroom, contradicting Individual A's statement that multiple persons sleep in the bedroom. Individual D stated that he did not recognize or use **Subject Phone 1**. Individual D recognized **Subject Phone 2** as MYLES's cellular phone.

## CONCLUSION

26. Based on the foregoing, I respectfully submit that there is probable cause to believe that, between on or about December 9, 2019, and on or about January 6, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, ISAAC MYLES, with the intent to harass and intimidate, did use an electronic communication service, an electronic communication system of interstate commerce, and other facility of interstate commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to a person, namely Officer A, in violation of Title 18, United States Code, Section 2261A(2).

FURTHER AFFIANT SAYETH NOT.

_____
MICHAEL WOODS-HAWKINS
Special Agent, Postal Inspection Service

SUBSCRIBED AND SWORN to before me on January 10, 2020.

_____
JEFFREY COLE
United States Magistrate Judge