IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| Plaintiff, ) | No. 20 CR 00021 | |
| v. ) | Judge Ronald A. Guzman | |
| ) | | |
| ISAAC MYLES ) | | |
| Defendant ) | | |

### DEFENDANT ISAAC MYLES' SENTENCING MEMORANDUM AND OBJECTIONS AND CORRECTIONS TO THE PRESENTENCE REPORT

Steven R. Hunter
Law Office of Steven R. Hunter
Attorney for Isaac Myles
900 West Jackson Boulevard
Suite 7-E
Chicago, IL 60607

Defendant ISAAC MYLES, by and through his attorney, STEVEN R. HUNTER, respectfully requests that this Honorable Court impose a sentence of 24 months in the custody of the Bureau of Prisons, in accordance with the sentencing purposes and considerations set forth in 18 U.S.C. §3553(a).

In support of this request, Mr. MYLES states as follows:

### I. BACKGROUND

Isaac Myles is a 51-year-old man who had pled guilty to Count 1 of his indictment to the charge of Stalking under 18 U.S.C. § 2261(A).

#### A. Early Life

He grew up on the West side of Chicago, in a neighborhood infested with gangs, drugs, and crime. His father died when he was 7 years old. (Presentence Investigation Report, [hereinafter PSR] p. 15; ¶86). According to his mother, she worked two jobs and he often lacked supervision. (Exhibit 1).

Early in life, he did well in school and was a basketball player of considerable talent and promise. He earned a basketball scholarship to Weber High School and his life was on track. He attempted to transfer to a better basketball program at Collins High School, but that was based on some very bad advice. After transferring he learned that he could only play basketball if Weber gave him a waiver. They refused, and the center of his life, basketball, disappeared in an instant.

1

Devasted, he lost interest in school, dropped out, and went to the streets. There he became addicted to drugs and ran with a rough crowd. Over the years he has acquired enough convictions to put in in Criminal History Category IV. The majority of those convictions are drug offenses, including a number of possessions of small amounts of drugs. He has been a user, not just a seller, and the sales were to finance his drug addiction.

Isaac Myles has tried several times to break his heroin addiction, including participating in the RDAP program while in the Bureau of Prisons. However, he has relapsed several times. Even so, he hopes to obtain more drug treatment and beat his addiction for good. While on Mandatory Supervised Release, (hereinafter MSR), Mr. Myles had one positive drug test. Drug use may have contributed to poor judgment in making calls.

### B. Family

Isaac Myles is single and has two adult children. (PSR p. 16; ¶90). He keeps in close contact with them even while he is incarcerated. (PSR p. 16; ¶90). Growing up he was close with his mother and grandmother. (PSR p. 15; ¶87). He has a good relationship with his siblings. (PSR p. 16; ¶89). They have steady jobs and support him. In fact, his sister has employed him prior to his incarceration. (PSR p. 16; ¶89). In addition, he is in a committed relationship

with Cierra Street, and can live with her upon his release if need be. (Exhibit 1, letters). These strong family ties give Isaac Myles a network of support that give him a good chance to succeed after he is released. His family members are in a position to offer him housing, employment, and moral support.



Isaac Myles and his girlfriend, Ciera Street.

### C. Efforts at Rehabilitation

In addition to the RDAP program, while in the BOP Mr. Myles obtained a GED, completed an anger management class and a parenting skills class, and took some college level courses. Since he has been in the M.C.C., Mr. Myles has completed a Cognition & Criminal thinking class. He had hoped to attend a second class, but COVID-19 restrictions put an end to classes. He is currently on a wait list for another Cognition & Criminal Thinking class and drug program. He has been given worksheets to complete while waiting for his class to begin, which he works on in his cell. Also, Mr. Myles has tried to use his time constructively, and for a time he worked as an orderly at the M.C.C., helping to clean the tier where he now lives.[1]

## II.  CIRCUMSTANCES OF THE OFFENSE

---

[1] Because he developed a rash he discontinued that job.

The defense has no disagreements with the factual basis in the plea agreement or the Government's version of the offense. However, some additional information is needed to provide necessary context.

According to the complaint, Mr. Myles made repeated obscene telephone calls. In addition, although it is not a part of the offense, he is alleged to have partially exposed his genitals on September 17, 2018, to Individual A. When that happened, Individual A filed a violation report, but did not recommend any action by the court. (See sealed Doc. #223, 10 CR 00647). The facts show that although, as the complaint states, the calls were "offensive, obscene and degrading," they did not contain any threats of violence. In one field report in the discovery the probation officer is quoted as having said she "…has no reason to believe that she is being threatened or targeted for violence in any way." (Sealed Exhibit 2, Field Report).

The complaint quotes calls where the caller says, "I'm sorry…I'm sorry for doing this…" and "don't think I'm a creep." These statements reflect the shame that Isaac Myles feels over his irrational behavior. The calls are what are commonly referred to as "obscene telephone calls" but the scientific name for them is "telephone scatophiliac," which is listed as an "other specified paraphilic disorder" in the American Psychiatric Association's Diagnostic and Statistical Manual (DSM-5)." (Exhibit 3, Psychology Today article and Exhibit 4 "Verbal Exhibitionism: A Brief Synopsis of Telephone Scatologia"). According to

the articles, that sort of behavior is more common than most people think. (See Exhibit 4, p. 11, heading "Prevalence of telephone scatologia").

The calls have an origin in a mental health pathology and did not manifest themselves as threats of violence. (Exhibit 4). "The most common features of obscene telephone callers were low self-esteem and anger toward women." (Exhibit 3, p. 2).

### III. CORRECTIONS OR OBJECTIONS TO THE PSR

#### A. Objections to PSR Content

##### i. The 6-point enhancement under U.S.S.G. §3A1.2 does not apply

The defense objects to the 6-point enhancement under U.S.S.G. §3A1.2 requested by the probation officer on page 6, paragraph 20 of the PSR. The Government, who knows evidence the best, did not ask for this enhancement because it does not apply.

The language of the Guideline makes it clear that the enhancement only applies if there is evidence that the actions of the defendant were motivated by the victim's status as a government employee. The Guideline states as follows:

> (a) If (1) the victim was (A) a government officer or employee; (B) a former government officer or employee; or (C) a member of the immediate family of a person described in subdivision (A) or (B); and (2) the offense of conviction was ***motivated by such status***, increase by 3 levels.
>
> (b) If subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels.

5

The PSR concludes, without evidence, that the offense was motivated by the fact that the victim was a probation officer. PSR indicates that Isaac Myles knew Individual A was a probation officer. This is not in dispute. But knowledge that the victim was a government employee is insufficient. The Guideline specifically requires, in addition, that the offense was motivated "…by such status." Knowledge of employment does not show motivation.

The PSR states two facts, neither of which support the assumption that Isaac Myles was motivated by Individual A's status as a probation officer. First, the PSR states that Individual A had previously identified herself to Isaac Myles as a probation officer. Second, it states that in messages left by Isaac Myles he asked Individual A not to report the calls to her superiors. While these two facts show that Isaac Myles knew Individual A was a probation officer, it does not show motivation. The most obvious motivation for an obscene phone call is sexual attraction to achieve sexual gratification with general misogyny. (Exhibit 3 and 4)

The content of the phone calls establish that sexual attraction, gratification, and misogyny were the motivation. It is an established fact that many women are subjected to obscene telephone calls who are not government employees. (Exhibit 3 Psychology Today "The Psychology of Obscene Telephone Calling" Exhibit 4 "Verbal Exhibitionism: A Brief Synopsis of Telephone Scatologia"). Therefore, not every obscene phone call is motivated by a person's status as a

government employee. To conclude that was the motivation in this case requires evidence.

There is no evidence to support the assumption that Isaac Myles was motivated by Individual A's status as a probation officer. Nothing in the content of the calls indicates this. Nothing in the indictment, the factual basis of the plea agreement, or the Government's version of the offense supports this conclusion. Because there is no evidence to support a conclusion that Isaac Myles was motivated by Individual A's status as a probation officer, the Government correctly did not include it in the Guidelines calculations in the plea agreement or in their version of the offense. Had the Government taken a different position, they would have borne the burden of proving that the obscene phone calls in this case had different motivations than most obscene phone calls by a preponderance of the evidence. See *United States v. Hines*, 449 F. 3d 808, 816 (7th Cir. 2006), *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir.1997). Without such proof, the enhancement must be denied.

The probation officer who wrote the PSR cites two cases in the PSR, but neither one supports the enhancement. First, he cites *United States v. Watts*, 798 F.3d 650, 655 (7th Cir. 2015). In the *Watts* case, the defendant threw a chair at a police officer after losing a civil rights trial in which he was suing a police officer and the defendant was convicted of assault for throwing the chair. At sentencing, the evidence showed that Watts was suing the officer because the officer broke his arm during an arrest of Watts. The evidence

7

further showed that at the time Watts threw the chair he shouted, "Now we're even." The 7th Circuit justifiably concluded based on Watts' statement that "Watts assaulted a police officer in revenge for actions taken by the officer in his official role." *Id*, at 655. No such statement exists in this case.

The second case cited by the probation officer is *United States v. Davila-Bonilla*, 869 F.3d 1 (1st Cir., 2020). The defendant in that case was convicted of "...intimidating or interfering with U.S. probation officers, see 18 U.S.C. 111(a)(1), and Count Two basically accused him of influencing U.S. probation officers by threat, see id. §115(a)(1)(B)." The defendant in that case made threats to his probation officer after she required him to appear for random drug test." Id, at 3. The evidence at the sentencing hearing established that the defendant made these threats in immediate response to his probation officer requiring him to provide a random urine sample for a drug test. His motivation was anger and revenge for the probation officer performing her duties as a government employee. Nothing of the kind exists in the present case. Mr. Myles was motivated by sexual attraction and a warped mental pathology that had nothing to do with Individual A's job. Therefore, the enhancement should be denied.

### ii. Sex Offender Registration is not mandated and registration and sex offender treatment should not be required

Sex offender registration requirements under Federal law are governed by SORNA at 34 U.S.C. 20911(5). Under that statute, a sex offense is defined as

8

"a criminal offense that has an element involving a sexual act or sexual contact with another" or "a criminal offense that is a specified offense against a minor: or "a Federal offense (including an offense prosecuted under section 1152 or 1153 of title 18) under section 1591, or chapter 109A, 11 (other than section 2257, 2257A, or 2258), or 117, of title 18." The statute goes on to include certain military offenses and attempts or conspiracies. The statute charged in this case is not included. In addition, no sex act or sexual contact is alleged. Therefore, Isaac Myles is not required to register a sex offender under Federal law.

Registration under Illinois law is governed by 730 ILCS 150/2. Subsections (B), (C), (E), and (E-5) list a large number of offenses which require registration under state law, including any Federal offense that is substantially equivalent to the offenses listed in subsections (B), (C), (E), and (E-5). The statutes that most closely resemble the charge in this case are 720 ILCS 5/26.5-1 or 5-2, which are Transmission of obscene messages and Harassment by Telephone, respectively. Another possibility is Cyberstalking under 720 ILCS 5/12-7.4. None of these statutes is included in the Illinois Sex Offender Registration Act.

Despite these facts, the PSR claims that registration is required under 42 U.S.C. §16913. This statute was transferred to 34 U.S.C. §220913. That law requires persons convicted of sex offense to register. However, as explained above, the offense charged in this case is not a sex offense and therefore Isaac Myles is not required to register as a sex offender under Federal or Illinois law.

9

This issue was discussed in plea negotiations, and it was agreed that Isaac Myles was not covered by SORNA. Therefore, the defense objects to mandatory condition 8 on page 22 of the PSR.

The defense also objects to Special Condition 9, found on page 25, requiring Isaac Myles to attend Sex Offender treatment determined by a probation officer. While the defense agrees that the actions of Isaac Myles were caused by a mental health pathology, it was not a sex offense as described in the Criminal Code. Isaac Myles would welcome treatment, but the defense submits that the sex offender treatment offered by the criminal justice system is an inappropriate tool to help him. Other mental health treatment is more appropriate such as the ones listed in Exhibit 4, p. 112, under Management of Telephone Scatologia. The defense further submits that a mental health professional, rather than a probation officer, is the best person to determine they type of treatment needed.

## IV. ARGUMENTS IN FAVOR OF 24 MONTHS OF INCARCERATION

**A. A sentence of 24 months of incarceration is sufficient, but not greater than necessary to satisfy established sentencing objectives of 18 U.S.C. §3553(a)(1) and (a)(2)**

The rule of lenity set forth in 18 U.S.C. 3553(a) requires a sentencing judge to impose a sentence that is sufficient, but not greater than necessary, to meet the statutory sentencing objectives set forth in subsection (a) (2). Applying that principle, a sentence of 24 months of incarceration on this case is just and fair.

### i. Nature and Circumstances of the Offense support a sentence of 24 months of incarceration under §3553(a)(1)

#### 1. Isaac Myles is Not a Danger to the Public

Isaac Myles is someone who has a mental health issue. That issue manifests itself with telephone calls that are admittedly disturbing, but which are not dangerous. During the call of December 23, 2019, Isaac Myles even apologizes, saying "I'm sorry…I'm sorry for doing this.." No one suffers physical harm from a telephone call, and telephone calls are the acts Isaac Myles took. Isaac Myles expects to energetically pursue help so that he will not feel the urge to make such calls in the future.

Moreover, a review of Isaac Myles's criminal history shows that he has no history of violence in his background since 2002. That was 18 years ago. Isaac Myles is a different person than he was in 2002. Today Isaac Myles is 51 years old. As people age they are statistically less likely to commit new crimes, including violent crimes. In fact, based on the most recent data available from 2019 in the F.B.I. Uniform Crime Report, about 90% of all violent crimes are committed by persons under the age of 50.[2] All of this supports the conclusion that Isaac Myles is not a danger to the public.

### ii. The Characteristics of Defendant support a sentence of 24 months of incarceration under §3553(a)(1)

#### 1. Age

---

[2] See https://www.fbi.gov/services/cjis/ucr

11

As explained above, criminal defendants have lower recidivism rates as they age. Isaac Myles is 51 years old. The offense alleged occurred in the Fall of 2018. The empirical data strongly suggests that a person as old as Isaac Myles is unlikely to reoffend, especially if he receives treatment for his Telephone Scatologia, which he hopes to do.

### 2. Efforts at Rehabilitation

Over the course of his life, Isaac Myles has struggled with drug addiction. He realizes he has a problem and is need of treatment. (PSR p. 19; ¶107). He obtained a G.E.D., taken some college courses, completed an anger management class, and completed a parenting skills class. In the M.C.C., Isaac Myles completed a Cognition & Criminal thinking class. He tried to take a second class and pursue other rehabilitative programs, but Covid-19 restrictions prevented that from happening. Nevertheless, Isaac has repeatedly demonstrated a desire to improve himself.

### 3. Supportive Family

Isaac Myles is described by his family as a loving, caring person. (Exhibit 1, letters). They have all requested leniency. In addition, they speak of how they need him in their lives. Isaac Myles is more to them than the sum of his worst acts, and it is clear that they will be there to support him when he is released. Previously, Isaac worked for his sister's company and could do so again. (PSR, p. 16; ¶89). This support system gives him a head start in transforming his life when he is released.

### iii. A sentence of 24 months of incarceration would provide adequate deterrence under §3553 (2)(B)

A lengthy prison sentence in this case will provide no general deterrence. Any observer of this details of this case will see that Isaac Myles has a statutory maximum of 60 months of incarceration. Any sentence at or near that length will send the message that accepting responsibility and pleading guilty are meaningless acts. A sentence of 24 months of incarceration, in contrast, along with a consecutive sentence for a violation of supervised released, will show any observer that obscene telephone calls are taken very seriously, and that the Federal criminal system punishes them with sentences that are many multiples of a state court sentence.

### iv. A sentence of 24 months of incarceration would reflect the seriousness of the offense under §3553 (2)(A)

The sentence in this case must reflect the seriousness of the offense. The requested sentence meets all the objectives. Two years is a long time in custody, but it is currently a harsher punishment than at other times due to the Covid-19 crisis. Isaac Myles has been without access to regular exercise. Isaac has faced the risk of contracting Covid-19, which is statistically a much greater risk for black people.[3] He has also been through a lock down where he could not have access to the telephone and was confined to his cell for days at

---

[3] ISAAC MYLES is black, which makes him at greater risk from Covid-19. According to the CDC, City of Chicago, Black non-Latinx people 2.8 times more likely to die from Covid-19. https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html

13

a time. Doing time in jail or prison is always hard, but it is much harder during the Covid-19 crisis.

### v. A sentence of 24 months of incarceration would promote respect for the law.

Had Isaac Myles been charged in Illinois courts, he would have been charged under 720 ILCS 5/26.5-1 or 5-2 and would be facing a maximum of 6 months in jail under 720 ILCS 5/26.5-5. Isaac Myles could also have been charged under Federal law with a violation of 47 U.S.C. 223(a)(A)(ii), Obscene or Harassing Telephone calls. Had that happened, the offense would have been covered by U.S.S.G. Guideline § 2A6.1. He would have a base offense level of 6. His criminal history places him in Category IV. This would have given him a Guidelines range of 6 to12 months. The probation officer is requesting 60 months in the Bureau of Prisons. Giving him a sentence far greater than that again makes the law appear arbitrary. Instead, a sentence of 24 months of incarceration is more commensurate with the acts committed.

Also, Isaac Myles is on mandatory supervised release. Under § 7B1.1, he would have a Grade B violation. Applying §7B1.46 to his criminal history Category of IV, and his Guidelines range is 12-18 months. The sentence for a violation of Mandatory Supervised Release "…shall be ordered to be served consecutively…" U.S.S.G. §7B1.3(f). In all likelihood this will be a consecutive sentence. Therefore, if Isaac Myles received 24 months of incarceration in this case, it is very likely to serve at least three years in prison for acts that could have resulted in 6 months. Any more will seem arbitrary and disparate from

14

other defendants who have done the same thing. That would promote disrespect for the law. None of this is meant to be an excuse to acts that are clearly criminal. Isaac Myles acknowledges that he must receive consequences for his actions and is prepared to accept them. But consequences should be proportional. A sentence of 24 month is proportional to the crime of obscene phone calls.

### V. CONCLUSION

The defense respectfully submits that a sentence of 24 months of incarceration is sufficient to protect the public but is also just and fair. It is a deterrent, it promotes respect for the law, but it is not more than is necessary to promote the ends of justice.

Respectfully submitted,

*s/Steven R. Hunter*
Attorney for ISAAC MYLES

Law Office of Steven R. Hunter
900 West Jackson Boulevard
Suite 7-E
Chicago, Illinois 60607
(312) 466-9466
Atty. No. 6196348

## **CERTIFICATE OF SERVICE**

The undersigned, attorney Steven R. Hunter, hereby certifies that the following document(s):

**DEFENDANT'S SENTENCING MEMORANDUM**

was served on June 30, 2021, in accordance with the FED.R.CIV. P. 5, LR5, and the General Order on Electronic Case Filing (ECF), pursuant to the district court's ECF system as to ECF filers. Non-ECF filers, if any, were sent copies by first class mail or hand delivery.

                                                By: *s/Steven R. Hunter*
                                                STEVEN R. HUNTER
                                                Attorney for ISAAC MYLES
                                                900 West Jackson Boulevard
                                                Suite 5-W
                                                Chicago, IL 60607